Good morning. Counsel could you give me one second because I have to boot things up here. All right. Good morning and you may proceed. Pete Ross representing the appellant. Cameron relies heavily on two cases, Spinner v. ABC and Hollywood Screen Test v. NBC. The standard is set forth in those cases is that to obtain summary judgment, the evidence of independent creation must be, and I quote, clear, positive, uncontradicted, and of such a nature that it cannot rationally be disbelieved. What do you do with Keitlinger? Pardon me? What do you do with the Court of Appeals, the Court of Appeal, apostrophe s, Mem Dispo in Well, I think that we have to go to first principles here on when one can get summary judgment and we have to look at this case on its facts and these two recent decisions that the other side relies upon. But let me offer you, let me offer you what troubles me about the California cases and see if you can summary judgment principles, the argument you make has some force. But as I read Keitlinger and the other California cases, it says when you don't have any direct evidence of copying or use, if you will, but that you're relying on an inference that arises from access and substantial similarity. And I must tell you, I think there is substantial similarity in this case. Then that inference doesn't get you to the jury if the other side comes forward with very specific evidence. And Keitlinger, again, non-presidential, says as a matter of California law, that's the way we treat these cases. Can you respond to that? Because that's, I think, the difficulty I have in this case from your side of it. Well, that's the crux of it. Indeed, I mean, you know that. So tell me why that's not what it is. Well, if you look at the cases in general, they really do stand for this proposition that case by case the evidence submitted by the defense could not rationally be disbelieved. But here I think we have the exact opposite situation. I think that here it's a case where Mr. Cameron can't rationally, well not can't rationally. Well, I mean, look, we're all assuming for purposes of this that your client's proffer of testimony is true. It may turn out to be under examination not credible, but that's not the issue today. So we could certainly, he could certainly rationally say the only thing I was ever told was the thing in the notes. And I don't find substantial similarity between the notes and the eventual product. But given the district judge's client's broader proffer, yes, that's where substantial similarity arises. Allow me please, if I may, to go into the facts of some of these cases. Sure. So I can, I think that's a good way to address. Before you do, could I ask you this? Yes. And I'm interested to hear your recitation of the facts, sir, but it seems to me the published cases are cases that rely on lack of access. Yeah, I think that's not what we have here. No, not at all. So Keitlinger, before we leave Keitlinger, is an unpublished case, as Judge Hurwitz acknowledged, but it seems to me that what he's struggling with, which is, it's a really fair question, because when we look at this standard, clear, positive, and uncontradicted, it almost flies in the face of summary judgment. One might think, how could you ever get summary judgment under those circumstances? But Keitlinger isn't just distinguishable because it's unpublished. It's also a case that found no substantial similarity. So there's an alternative holding. If we were to go that route, we'd be relying on an unpublished case and an alternative holding in an unpublished case. And I may be talking to Judge Kristin rather than you, but doesn't the Keitlinger panel assume substantial similarity for purposes of its analysis? So that's why I think it's troublesome. Well, I'm going to invite someone else into the conversation. Go right ahead, please. You were going to talk about the other cases. Yeah, I think that, you know, it's a very troubling thing, because it does seem to alter the standards for summary judgment. But to rationally try and reconcile what's going on here, I was looking at the facts of these cases. I'm going to start with Spinner. In that case, the script for Lost, or a show called Lost, a pilot, was submitted to ABC in 1977. The people to whom the script was submitted left two years later. Twenty years later, a man arrives at ABC, and he's the one who says he put together the script for this pilot that ultimately aired as Lost on the network. And he put on a lot of, he submitted a lot of credible evidence that he really had written it. And the court said, well, the plaintiff in that case had nothing to contradict this story that the guy arrives 20 years later and never looked at his script and never talked to anybody. No access. And the court said no access. And the court went on in a separate section to say that there was also all this credible evidence that the man wrote it independently that you're not contradicting. But it was... But to any of these cases, all of these cases, if I'm not, if I read them correctly, and I think this is the nature of the beast, don't involve any direct evidence of use. They're all an inference of use, correct? Yeah, and that's almost always the case in copying. That's going to be the norm that you're not going to have direct evidence of copying very often, are you? Right. And that's why we prove copying by access and substantial similarity. And is that enough to get to the jury? That's my question. I think it should be. What California case do you cite for that proposition? That's, I'm having trouble finding one. We can distinguish cases, but what California case says that access and substantial similarity are sufficient to get to the jury? I'd have to look back at my papers, but we cited a California Supreme Court case for access and substantial similarity being the test. Right. And I thought what that case said, and like you, I'm struggling to remember the name of it, was that that was sufficient to create an inference. But is there a case that says when confronted with a denial thereafter, that's documented, that that's enough to get to the jury? You see my difficulty here. My difficulty is the California cases seem crazy to me. Under normal principles of interpretation, they might say the same. I know. But, you know, they used to say that about the Arizona cases when I was there. I'm not part of this. Just teasing. Please go right under normal. I find your argument very compelling under sort of normal summary judgment principles. I'm struggling with these California cases that seem to adopt a method of approaching this that seems alien to me to use it, to use a phrase, to use a phrase that ought to apply to this, to this case. And so help me with that. Well, I think that I have the same issues and I think the best we can do is look at our facts compared to these other cases and just go on their rule of law and take it as it says that the defense evidence has to be of a nature that it cannot rationally be disbelieved. In our case, I think it's the opposite of Spinner. In our case, Cameron can't controvert directly our story. We say that just two years before he wrote Avatar, we came in and pitched this movie giving him the plot and the characters and he invited us back for a second pitch meeting. Both meetings are on Cameron's calendar. That establishes access. Yes. And he says he can't remember what was said at either pitch meeting. But, but sir, if we have access and substantial similarity, then then then there's a question about whether or not the presumption has been rebutted. Right. It's clear, even though the standard does seem a little counterintuitive, it's clear that that it's possible for defendants to rebut the presumption. They can. Why haven't, why isn't there showing good enough? Because in the opposite scenario from Spinner, we're there two years before he writes the script and Cameron says in response, but I wrote some things 10, 15 or 20 years ago that I'm relying upon. And he says he took some elements of xenogenesis and he took some elements of Right. And so what's wrong with that? And it doesn't prove by beyond a doubt or beyond us disbelieving it that he necessarily would have combined the. Well, the nine different. Things he'd previously written, plus three different publicly available stories, he agreed with the evidence. You're just at summary judgment. So if there's weight on their side and weight on your side under normal principles of summary judgment, you've gone far enough to get by summary judgment without being able to utterly destroy their evidence, haven't you? Yes. But and indeed, your evidence may get utterly destroyed because most of it is your client's word of what he told Mr. Cameron. Yes. But that's that's a separate issue. Yeah. So that's why I'm a little concerned when you say nobody could rationally argue the other way. It didn't respond to this because this is what I take out of the California cases and I'm troubled by them. There seems to be a notion that we want to protect the movie industry against people coming along later and saying, I told you this. And so it says when we're just when we're when we get to get to a case on the basis of an inference of access and substantial similarity, if the creator of the work comes forward with specific information, you've got to do something to controvert that specific information rather than relying simply on the inference. That's what again, it's an unpublished decision, but the California Supreme Court hasn't spoken directly to this. That's what Keitlinger seems to say. Is that not the California law? Well, I don't believe it is and I don't believe in any event that it should be. And maybe there's a reason that that's an unpublished decision. There does seem to be a certain amount of protectionism with the movie industry in a business way. It makes sense for California to protect the movie industry. But as a legal matter, I don't see where we can have a separate standard just for movie studios or television studios. If California did, would we be required to apply it? It's a diversity case. If that was really the case, I think we'd have to follow precedent, but I again latch on to the language that their evidence have to has to be of a nature that it cannot rationally be disbelieved and saying, well, I had 10 different sources and I was drawing elements. And of course, I would have come up with this particular arrangement on my own at some time can be rationally disbelieved versus a guy who says, I pitched the story to you before you just before you wrote the movie. We have six independent witnesses that say they heard our pitch and they say it sounds an awful it sounded an awful lot like Avatar. And we have notes that confirm elements of these pitches. And we have a letter that confirms a movie deal that you have less than two minutes. Do you want to reserve the remainder of your time? I'm going to reserve. We'll hear from opposing counsel now, please. Please, the court. Robert Rothstein for the appellees. Judge Grissom, I'd like to actually respond to a question you had regarding Spinner. Actually, Spinner, yes, there was no access in Spinner, but there was an alternative holding. And I'd like to quote from the case. Spinner said, Plaintiff argues that evidence of access and substantial similarity contradicts the evidence of independent creation. First, this reasoning is circular and unpersuasive. Evidence of access and substantial similarities may indeed raise an inference of use, but this inference may be dispelled as a matter of law with the very type of evidence that ABC, the defendant there, presents. That is, even if evidence of access and substantial similarity exists, it does not contradict ABC's evidence per se, but merely gives rise to an opposing inference, which ABC is dispelled. So the alternative holding really assumes access in Spinner. Although in Spinner, the access holding, the assumption of access was the subject of rebuttal, was it not? In other words, somebody said, yeah, the studio had it. It was sitting around here. But I was the creator of the work and I swear I never saw it. And so access and substantial similarity may have given rise to an inference. But the creator of the work said I didn't have access. And therefore, unless that was somehow contravened, the court said we have here uncontradicted evidence that there must have been independent creation. This is a little different. The creator here, for purposes of summary judgment, has access. For purposes of summary judgment, you argue to the contrary, but I must tell you that if you believe everything the other side says, then there's substantial similarity. What do we do in that kind of case? That's not that's really not Spinner. Well, Judge Hurwitz, I would submit, actually, that Spinner is more than just the denial that they had access. Spinner talks about the creative process and they talk about Gilligan's Island. They were inspired by Gilligan's Island and Survivor and Castaway and Lord of the Flies. The court credited that. It wasn't just the denial of access. They also credited the the notes and the outlines, if you look at the case, and the and the scripts that they drafted said, look, they're engaged in the creative process. So it clearly wasn't just the denial of access. I think if Spinner were just a denial of access, there wouldn't have been summary judgment. It was the no, no, there was there was more detail. But but to me, one of the critical distinguishing facts in that case was the was the studio or maybe the company had this information, but I never did. It was in it was in their vault. So the company had technical access, but I didn't have real access. And now let me show you how I created it. No rebuttal here. We start out with the assumption of real access. And then your client says, and let me show you how I created it, independent of that access. Why doesn't that create a jury question? Let me again push back a little bit on Spinner. If it were just that the creators were saying there was no access, they wouldn't have to talk about independent creation because they already found as a matter of law that was no access. They were assuming use. If you look at what they were doing, there's a doctrine in copyright law, striking similarity, which is is is is a substitute for access. It looks to like language isn't precise in Spinner, but it says, let's assume use based on similarity. I think they were talking about striking similarity in that case as a as a mode of access. So they did have to confront the independent creation issue. And it was not merely the denials of using it because they had to. They were they were assuming that there was access through similarity. If this were a copyright case, would there be a jury question? The Ninth Circuit law is not clear. We never is. We try. I really don't know of any Ninth Circuit cases that squarely hold. I know we cite Hogan district court cases, Hogan and Scholastic, which are copyright cases which do involve access and which do grant summary judgment based on independent creation. We did them citing, so maybe I shouldn't mention them, but there's some Fourth Circuit district court cases that do the same thing. So this really isn't I think I do. Let me mention Keitlinger. Keitlinger really, by the way, does for the second part of its discussion, assume substantial similarity or wouldn't get their alternative holdings. I know courts issue and your honors will know better than my courts issues. Forgive me for interrupting. It's it's echoey in here. Can I get you to speak just a little slower? That'll help me. Sorry. It's not at all. It's just echoing. It's my age old problem. And I thought it would get better as I got older. But apparently nothing gets better. Yes. So thank you. Go right ahead. Forgive my interruption. That's so Keitlinger clearly confronts the issue of independent creation. It's a well-reasoned case and it's post access. And if you compare if you compare the the putting aside the issue of denial, which I do not think is dispositive and spinner, the evidence in this case, the uncontroverted evidence is is really much more compelling. Plaintiff accuses us of cherry picking elements. That's not what the evidence of prior creation is. The evidence of prior creation is of all of Avatar, the elements that Mr. Murawski complains about and other elements. If you take xenogenesis, you have blue, blue skinned humanoids. That's not something that plaintiff complains about, but that's clearly a source of Avatar. You have. Was that one of the published works? Xenogenesis was not one of the cameras produced works, with the exception years ago of about a 10 minute little film he made, which is relevant, by the way, because in that film there's a suit that the villain uses. Quaritch uses an avatar. So even that little published film way back when goes back and you have the concept of a sentient planet and you have a concept of a neural network, you can look at the drawings. I mean, they're drawings that come not only from xenogenesis, but from 11th grade homeroom, Miss Pamela's 11th grade homework that just look at them. They're an avatar. So we're talking about the creation of the entire movie, not just cherry picking elements. And that's the kind of evidence that Spinner and Keitling are talking about. And I would submit this is more compelling and Spinner and Spinner. All I said is, oh, we thought of Gilligan's Island. We thought of Lord of the Flies. I mean, it's compelling, but we're at summary judgment. What do we do with it? It's not like they have nothing. You know, it's why isn't it a jury question? I know we're really harping on this point, but what's your best shot? What's your best? I think the best shot is what every single California case on this says. Hollywood, but they're not on point. They're not on all four, sir. Or show me if I'm, if I'm wrong. Absolutely. Which one is your best case? Keitlinger. Keitlinger is our best case. Keitlinger is not published. And your original statement involved there being an inference on one side against the evidence that's on the other side. If you forget about Keitlinger, doesn't that sound like a classic case for surviving summary judgment? Well, no, your honor, because I was quoting from Spinner. Oh, I'm sorry. I was going to forget about Spinner for a minute. And would it not be a classic statement for denying summary judgment? You say, well, there's an inference over on this side. There's no evidence on the other side. Let's let the jury do its job and decide the evidence. Actually, I don't think it is. I mean, I think that in the law, inferences can be rebutted all the time. I mean, basically, you know, in the law all the time, juries decide whether they've been successfully rebutted. I think certainly as a matter of law, an inference can be rebutted. There are the independent creation case. But normally an inference that can be rebutted, if it's on one side and possibly rebutting evidence on the other side, wouldn't that normally be something for a jury to decide? That is to say, whether it had been successfully rebutted. Well, your honor, not as in this case where the burden shifts and what the California cases have said. That's sort of what I'm trying to ask is, absent the particular California cases you're talking about, if we either found they're not applicable or not precedential, then aren't we back to the normality of denying summary judgment? Well, if you have conflicting inferences and no burden of proof, I think the answer would be yes. But this is a case where the California law clearly applies. It's a diversity case. And what Spinner says and what the other case says is, you know, it's not that they're conflicting inferences. Once there is undisputed evidence of independent creation, the burden shifts back to the plaintiff to do something. But it's the undisputed part that's a problem. But the facts here, your honor, of what Mr. Cameron did are undisputed. There is no dispute that none of the evidence that Mr. Cameron presented has been controverted. I want to get to one point on this one. Except by nature of the inference. Is that what you're saying? That's what I'm saying. All they're arguing is timing and similarity and lack of credibility. And all the cases say you can't do that to rebut the inference of independent creation. What do you do with the reference to Gardens of Eden in Mr. Cameron's notes? Well, again, that's post-meeting, obviously, because he wouldn't have known the Gardens of Eden before the meeting. And it's in his notes, it's suggestive that he was thinking of this work as he created Avatar. Is that enough of a contradiction to get to get past the California case law? Not at all, your honor. Actually, what that is, plaintiffs call it notes. It's really a project list. And if you look at it, it's separated by dotted lines, boxes. And there are a bunch of projects listed. Why do the dotted lines help me with the undisputed parts? You're going to have to slow down and back up on this. They're in the notes. I have the this is this is exactly my question about your use of the word undisputed. So if you could drill down on this, it would help me. OK, sure. I would I would hold it up, but I'm reluctant because it's a confidential document. So we couldn't see it anyway. OK, so they're basically projects separated by lines to separate them and by title. And there are a number of them. They're not just the Wind Warriors and Avatar on there. But two of the entries are Wind Warriors and Avatar. Mr. Cameron's testimony was, and this is undisputed, that these was a running list and the entry for Wind Warriors and Avatar could have been made as much as six years apart. In the dotted line, the box, the dotted line on top, dotted line on the bottom of Wind Warriors. Below that, there's a reference to Guardians of Eden in connection with Wind Warriors. And why is that? Because the reference to Wind Warriors says aviatrix, psychotropic plants, Amazon jungle. And I think it says something about a blimp, which, you know. So. Guardians of Eden actually had the Wind Warriors characteristics. There's a note that that the Guardians of Eden is like Wind Warriors, and indeed it is. Wind Warriors was in the jungle and Wind Warriors preceded Guardians of Eden. What's troublesome about this is, let me take a little bit of independence here. I think if I were the finder of fact, looking at all this evidence, I would rule for your side. But I'm trying to figure out why it is that it doesn't create a factual issue. You've got a great explanation for why it's there. But we have substantial similarity, we have access, and we have a reference in your client's notes, for want of a better term, to this thing. Why doesn't that create enough of a fact issue for them to bring their bad case to a jury and lose it there? Because on the face of that document, actually, it contradicts what they're saying. If you look at the entry for Avatar, it refers to a third-party work called Call Me Joe and Mother, one of Mr. Cameron's work, both involving paraplegic controllers. So when Mr. Cameron is talking about Avatar on that project list, he's talking about two other works. So they're separated. I mean, if he were thinking of, quote-unquote, thinking of Guardians of Eden with Avatar, you would think it would be under that list. To the contrary, they're two other works. So that's rank speculation that plaintiff engages in to say that Mr. Cameron was thinking of things, and the entries were made, it's uncontroverted. Again, under the California cases, plaintiff cannot rebut the inference by speculating. And, you know, you'd have to speculate why that's there. And on the face of it, there is no relationship. There are a bunch of other projects on that list, and no one's going to say that Mr. Cameron was thinking of those projects when he was talking about Avatar. So it's complete speculation. Really, it's another attempt at timing, you know, the fact that there's this project list that Guardians of Eden referenced in connection with Wind Warriors, a separate project, just shows timing, and it's undisputed. It's not evidenced. And again, Spinner and Keilinger and Hollywood screen tests say you don't speculate about the, you know, speculate about the credibility of witnesses. And that's what you have, rank speculation. In about the 24 seconds I have remaining, there's a reason that this is important. Ideas are ordinarily free as the air. I mean, the Supreme Court, U.S. Supreme Courts recognize that ideas have First Amendment, in copyright, have First Amendment benefits. And, you know, and this really serves as a protection, you know, where, you know, a plaintiff can go to trial if they can rebut this or if there's no independent creation evidence. But whereas here, there's clear, positive evidence of independent creation, and they don't dispute it, the California courts really don't want to prevent creators from using ideas. Thank you. Thank you. In my little remaining time, I'd like to make just two points. One is, I was thinking about this issue of summary judgment standard as I sat there. And there is no case in California that expressly says that we are altering the standard for summary judgment. Well, I have no idea what the California standard is as opposed to ours. So. It's basically the same, that if there's a controverted issue of material fact, then it has to go to the jury. And the project notes, Guardian of Eden does, Guardians of Eden appears. I said it wrong. I say it wrong all the time. But it appears right in front of the, right above the line, which says Avatar. And if we credit Mr. Cameron's testimony about their different sections, and it's really in the Wind Warriors section, they say they based Avatar on Wind Warriors, in part. So it all gets melded in. And with that, I have nothing further. Thank you, counsel. Thank you all. Okay. So.
judges: Sentelle, Christen, Hurwitz